IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2018 MAR 14  PM 3:50

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>         Plaintiff, ) | |
| ) | CIVIL NO. A18CV0225 RP |
| v. ) | |
| ) | |
| $126,839.00, MORE OR LESS, ) | |
| IN U.S. CURRENCY, ) | |
| ) | |
| 2014 JAGUAR F-TYPE CONVERTIBLE, ) | |
| VIN: SAJWA6GL1EMK09467, and ) | |
| ) | |
| 2008 CHEVROLET TAHOE, ) | |
| VIN: 1GNFK13028R132021, ) | |
|          Defendants. ) | |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by and through the United States Attorney for the Western District of Texas, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

### I. NATURE OF THE ACTION

1. This action is brought by the United States seeking forfeiture to the United States of the following property:

- **$126,839.00, More or Less, in U.S. Currency;**

- **2014 Jaguar F-Type Convertible, VIN: SAJWA6GL1EMK09467; and**

- **2008 Chevrolet Tahoe, VIN: 1GNFK13028R132021**

(hereinafter, referred to collectively as "Defendant Properties").

## II.    STATUTORY BASIS FOR FORFEITURE

2.    This is a civil forfeiture action *in rem* brought against the Defendant Properties for violations of 18 U.S.C. § 1957 and 21 U.S.C. §§ 801 *et seq.* (the Controlled Substances Act) and subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1) and 21 U.S.C. §§ 881(a), which state in pertinent part the following:

**§ 981. Civil Forfeiture**
    (a)(1) The following property is subject to forfeiture to the United States:
        (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.
            ***
        (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of. . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**§ 881. Forfeitures**
    **(a) Subject property**
        The following shall be subject to forfeiture to the United States and no property right shall exist in them:
            ***
        **(4)** All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).
            ***
        **(6)** All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## III.    JURISDICTION AND VENUE

3.    Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), the Court has jurisdiction over an action for

forfeiture. This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. §§ 1355(b) and 1395.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District and because the Defendant Properties are found in this District. *See also* 28 U.S.C. § 1395(b).

5. The Defendant Properties were seized on October 18, 2017, by the Travis County Sheriff's Office (TCSO). The Defendant Properties have remained in custody, within the jurisdiction of the United States District Court, Western District of Texas, and shall remain within the jurisdiction of the court pending litigation of this case.

### IV.   FACTS IN SUPPORT OF FORFEITURE

6. In 2017, the TCSO and the Internal Revenue Service (IRS) joined an investigation started by the Pflugerville Police Department (PPD) involving a subject identified with the last name of "Conner." Conner, a 20-year-old male, was being investigated for selling illegal narcotics in the area of the Domain (a mixed use development with shops, restaurants, and apartments in north Austin, Texas).

7. On September 20, 2017, the PPD, through the use of a confidential informant (CI) purchased 0.28 ounces of marijuana for $60 from Conner at the Domain. The CI paid Conner for the marijuana after entering the 2015 Cadillac driven by, and registered to, Conner. After handing the payment to Conner, an unknown white male sitting in the backseat handed the marijuana to the CI, and the CI exited the Cadillac. This was the first "controlled buy" from Conner and the unknown white male.

8. On October 4, 2017, law enforcement made a second purchase of marijuana. The same CI purchased 1.1 ounces of marijuana for $230 from Conner at a parking lot in the

Domain. The CI paid Conner for the marijuana after entering the 2003 Honda Accord driven by Conner but registered to an unknown third party. The same unknown white male in the backseat provided the marijuana to the CI. During this transaction, Conner referred to the unknown white male as his "plug." (Based on their training and experience, law enforcement personnel know that "plug" is a slang term for a source of supply for narcotics or contraband.) Using a photo lineup following the second controlled buy, the CI identified the white male who handed him the marijuana as a 28-year-old Austin resident with the last name of Kuehn.

9. On October 11, 2017, law enforcement conducted surveillance at Conner's apartment building. At 12:00 p.m., Conner was observed leaving his apartment with a backpack as he walked toward the elevator. At that time, an officer passed Conner in the hallway and detected a strong odor of marijuana. (The same officer had been in the enclosed hallway around the corner from Conner's apartment for approximately two hours and had not detected any marijuana odor until he passed Conner in the hallway.)

10. Officers observed as Kuehn met with Conner at Conner's apartment and then both left together in the Honda Accord driven by Conner with Kuehn in the backseat. (Kuehn had arrived at Conner's apartment in a 2015 Dodge Challenger.) The surveillance continued as Conner and Kuehn arrived at the same parking lot in the Domain where the CI waited for them. The CI entered Conner's Honda and sat in the front passenger seat. The CI paid Conner for a third purchase of marijuana while Kuehn was in the backseat. The CI obtained 3.64 ounces of marijuana from Conner and Kuehn. The CI also discussed making a future marijuana purchase for a much larger amount, and Conner agreed that they could provide the amount requested.

11.   On October 17, 2017, the CI placed a consensually monitored call to Conner to order five pounds of marijuana. Conner told the CI that the cost was $1,900 per pound, for a total of $9,500, and the transaction was scheduled for October 18, 2017.

12.   The TCSO obtained search and arrest warrants for Conner and Kuehn at their respective apartments. The warrants were executed on October 18, 2017.

13.   The warrant for Conner was executed at his apartment at 3000 Kramer Lane, Austin, Texas and included the 2015 Cadillac and the 2003 Honda Accord that Conner had driven to the controlled buys. Officers seized the following items from Conner pursuant to the warrant:

   a. A blue backpack found in Conner's 2015 Cadillac which contained the following:
      - Conner's wallet with his driver's license;
      - Marijuana;
      - U.S. currency;
      - A grinder containing marijuana residue;
      - Apple iPhone;
      - 14 yellow pills of Acetaminophen Hydrocodone in a plastic baggie;
      - 8 yellow pills of Acetaminophen Hydrocodone in a plastic baggie; and
      - A Glock 19 9mm pistol with one round in the chamber and loaded with a magazine containing 10 rounds.

   b. From inside Conner's apartment:
      - 15.7 grams of marijuana in a plastic baggie on the kitchen table;
      - 32.3 grams of marijuana in a plastic baggie in a drawer in the bathroom;
      - 32.8 grams of marijuana in a plastic baggie in a drawer in the bathroom;
      - 33.6 grams of marijuana in a plastic baggie in a drawer in the bathroom;
      - Media drive inside Conner's nightstand;
      - Ledgers depicting money and marijuana; and
      - Approximately $1,731 in U.S. currency in a drawer in the bathroom.

14.   Conner was arrested and charged in State Court with felony charges of Delivery of Marijuana (more than 0.25 ounces but less than 5 pounds) and Possession of a Controlled Substance (less than 1 gram).

15. The warrant for Kuehn was executed at his apartment at 4800 Steiner Ranch Blvd. Austin, Texas and included the 2015 Dodge Challenger that Kuehn drove to Conner's apartment. When officers entered the master bedroom (*i.e.* Bedroom #3) on the lower level they found a loaded AK pistol sitting on the window sill. Officers unloaded the weapon and made it safe before continuing the search.

16. Also found in the master bedroom was a Louis Vuitton backpack containing a wallet with Kuehn's driver's license and money. There was also loose currency inside the backpack and a gold Versace ring. On the left side nightstand next to the bed, officers found a small clear plastic bag with a white-rock substance which tested positive for cocaine. The right side nightstand held two key fobs: one marked with a Chevrolet emblem and the other marked Jaguar. Also contained in the right side nightstand was a pair of handcuffs noted to be the same quality as law enforcement uses and a spent 9mm shell casing that matched a bullet hole in the nightstand.

17. The closet in the master bedroom had numerous boxes and bags labeled Louis Vuitton and Versace, including receipts from Louis Vuitton with Kuehn's name on the receipts for purchases for $600-$800 in goods and other high-end items such as Michael Kors watches and jewelry. Officers located a rolled up dollar bill sitting on its end on the counter of the master bathroom. (Based on their training and experience, law enforcement personnel recognized the rolled up dollar bill as a method used to snort narcotics, such as cocaine.)

18. The left upstairs bedroom (*i.e.* Bedroom #2) contained a large black safe in the corner of the room. Kuehn refused to provide the combination, so law enforcement used tools to open the safe. The safe contained the following:

- Approximately $126,839 in U.S. currency bundled in multiple stacks (includes loose currency from the Louis Vuitton backpack);
- Dexmethylphenidate, 19 green pills 15 mg in a plastic baggie;
- Dexmethylphenidate, 3 blue pills 5 mg in a plastic baggie;
- Sporter Rifle;
- Kel-Tec Rifle;
- Glock pistol;
- Masterpiece Arms pistol;
- Glock 42 frame;
- LRT 7.62 rifle;
- Miscellaneous firearm accessories including a weapon suppressor;
- Gold ring in a Versace box;
- Gold chain in a Versace box;
- Texas driver's licenses for both Kuehn and Conner;
- Narcotics packaging materials; and
- Ledgers indicating various types of marijuana and sales of said marijuana.

In the closet to Bedroom #2, officers located a box of 12-gauge shotgun ammunition and several magazines for various caliber firearms. The bedroom also contained a large amount of paperwork and documentation indicating that Kuehn had purchased multiple vehicles and rented numerous apartments. Officers also located a green composition book with a written ledger which detailed personal expenses for furniture, a boat, safes, and other items. The total of these expenditures was listed as $30,500.

19. The other upstairs bedroom (*i.e.* Bedroom #1) contained furniture but did not appear lived in. In the closet, officers found a large amount of ammunition and body armor capable of stopping rifle rounds.

20. From inside Kuehn's apartment, officers seized the following additional items pursuant to the warrant:

- Cocaine, 4.1 grams in a plastic baggie from the master bedroom;
- Marijuana, 9.5 grams from bar area;
- Marijuana, 9.5 grams from bar area;
- Acetaminophen with Codeine, 23 pills from kitchen drawers;
- Electric money counter from the master bedroom;
- Black Apple iPhone from the master bedroom;

- Samsung flip phone from the master bedroom;
- AK Rifle from the master bedroom;
- Glock pistol with magazine (from the Jaguar);

21. The drug ledgers (identified as such by law enforcement through training and experience) found in Kuehn's apartment list names, dates, types of marijuana, and money amounts. One such page lists money amounts with a name next to the amount. This page appears to be an income statement and includes a $6,000 "cash in safe" notation. The total adds up to $216,925 with $185,200 going to RBFCU and UFCU.[1] Another page relates to this income statement as it denotes a total dated "9-22" for $197,200. From the $197,200, a subtraction for $12,000 (labeled "driver") is made which leaves a subtotal of $185,200, matching the income statement mentioned above. Another ledger page titled "Credit" has 17 entries ranging from $1,300 to $1,450 for "Donovan" and shows 15 of the entries scratched out and marked paid.

22. The ledgers found also denote numerous firearms listed by Kuehn. As part of this investigation, law enforcement found that Kuehn had purchased at least 77 firearms between February 2016 and November 2017. The cost of the 77 firearms purchased and traced to Kuehn is over $39,400. Furthermore, the Glock 9mm pistol that was seized from inside Conner's Cadillac at his arrest was registered to Kuehn.

23. Kuehn was arrested and was charged in State Court with felony charges of Delivery of Marijuana (more than 0.25 ounces but less than 5 pounds), Possession of a Controlled Substance (more than 4 grams but less 200 grams), and Delivery of a Controlled Substance (less than 28 grams).

---

[1] Investigators determined that Kuehn banks at Randolph Brooks Federal Credit Union and at University Federal Credit Union.

24. Investigators determined that Kuehn purchased the 2008 Chevrolet Tahoe on September 9, 2017, from a dealership in the Austin, Texas area. Officers interviewed the salesperson who sold the Tahoe to Kuehn and the store manager who oversaw the transaction. The salesperson was able to confirm Kuehn's identity from a photo. The salesperson explained that Kuehn purchased the vehicle, but he wanted it titled in his father's name ("PBK"). Kuehn did not provide a reason as to why he wanted the Tahoe titled in PBK's name. The salesperson and manager confirmed that PBK was never at the dealership and that they never spoke to PBK by telephone. They further stated that all negotiations and the payment for the vehicle were handled by Kuehn.

25. The dealership required a copy of PBK's driver's license and vehicle insurance, so Kuehn emailed the documents to the dealership. Since the purchase of the Tahoe was all cash and since the Tahoe was going to be titled in PBK's name, the dealership requested that PBK sign the necessary documents for the purchase of the Tahoe. The dealership provided the documents to Kuehn, who brought them back signed. Kuehn paid $17,000 in cash for the Tahoe; the money was contained in a Louis Vuitton backpack which Kuehn was carrying.

26. The salesperson and manager also mentioned to investigators that a couple of days before purchasing the Tahoe, Kuehn had visited the dealership in a white Cadillac. During this visit, Kuehn was accompanied by a black male, who identified himself. An employee at the dealership noticed that there was a large, rubber-banded stack of cash sitting on the dashboard of (Conner's) Cadillac which was visible to anyone passing by. The display was so unusual that a dealership employee took photos of the cash on the dashboard.

27. Investigators also determined that Kuehn purchased the Jaguar F-Type convertible (which was parked at his apartment) on October 5, 2017, from a dealership in the

Dallas, Texas area. The salesperson told investigators that although Kuehn purchased the vehicle, he wanted it titled in his father's name – PBK – who lived in the State of Idaho. Kuehn paid the $62,963.56 purchase price in cash that he pulled from a backpack he was carrying. Kuehn also traded in the Dodge Challenger for the purchase of the Jaguar. PBK was never present at the sale, but the salesperson did speak with someone by phone who identified himself as PBK. The dealership had paperwork sent to PBK for signature. (The returned documents included an Idaho driver's license for PBK.) The salesperson remembered that Kuehn was accompanied by a black male, but did not recall speaking with him. Officers showed the salesperson a photo of Conner, and the salesperson confirmed that the man in the photo was the person who came to the dealership with Kuehn. Kuehn was not able to take possession of the Jaguar on that day as PBK still had to sign the documents, so arrangements were made to have the Jaguar shipped to Austin and the Dodge Challenger picked up at the same time.

28. The Defendant Properties were seized by law enforcement as illegal proceeds traceable to a drug or money laundering offense; as property used to facilitate unlawful drug crimes; and/or property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.

29. Records demonstrate that Kuehn had reported earnings of $1,955.68 for 2016 but no reported earnings in 2017. Additionally, records demonstrate that for 2016, Kuehn had payroll deposits of $13,534.73 but unknown cash deposits of $153,317.47. The 2016 cash deposits into Kuehn's accounts amounted to 91% of all deposits made into that account. Between January and October 2017, Kuehn's cash deposits totaled $38,365 (*i.e.* 67% of all deposits). In addition, Kuehn had $88,463.56 in cash expenditures for vehicles in 2017 (not including his expenditures for high-end fashions, jewelry, and apartment) as follows:

      a. Jan. 2017, $8,500 cash down payment on Dodge Challenger;
      b. Sep. 2017, $17,000 cash payment for the Chevrolet Tahoe; and
      c. Oct. 2017, $62,963.56 cash payment for the Jaguar.

30. Given the seizure of the sizable amount of cash (*i.e.* approximately $126,839); the observations from the three controlled buys; the recovery of various controlled substances in Kuehn's apartment; Kuehn's lavish lifestyle conducted primarily with cash; Kuehn's lack of employment income; and the state drug charges, these facts and circumstances would lead a reasonable person to believe that the Defendant Properties represent illegal proceeds traceable to a drug or money laundering offense, property used to facilitate unlawful drug crimes, and/or property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957. Based on the foregoing facts, the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1) and 21 U.S.C. §§ 881(a).

## V.    PRAYER

WHEREFORE, Plaintiff United States of America prays that due process issue to enforce the forfeiture of the Defendant Properties; that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed;[2] that a warrant for an arrest in rem be ordered; that the Defendant Properties be forfeited to the United States of America; that the Defendant Properties be disposed of in accordance with the law; and for any such further relief as this Honorable Court deems just and proper.

---

[2] Appendix A, Notice of Complaint of Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Defendant Properties.

Respectfully submitted,

JOHN F. BASH
UNITED STATES ATTORNEY

By: *[signature]*

DANIEL M. CASTILLO
Assistant United States Attorney
Texas State Bar No. 00793481
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5854
E: Daniel.Castillo@usdoj.gov

ATTORNEYS FOR PLAINTIFF,
UNITED STATES OF AMERICA

## VERIFICATION

I, Jeff Terrell, declare and state that:

1. I am a Special Agent with the Internal Revenue Service-Criminal Investigation. I am assigned to the Austin Office and am the criminal investigator responsible for the accuracy of the information provided in this litigation.

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof. The information contained in the Verified Complaint for Forfeiture has been furnished by official government sources. Based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of March, 2018.

_____
JEFF TERRELL, Special Agent
Internal Revenue Service-Criminal Investigation
Austin Office